HOME SAVINGS ASSOCIATION and H.S. SERVICE CORPORATION, Appellants, v. ROBERT T. BIGELOW, Respondent.

No. 14108

September 6, 1989                                    779 P.2d 85

*Pearson & Patton*, Las Vegas, for Appellants.

*Francis J. Morton*, Las Vegas; *Morse & Mowbray*, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court dismissing appellants' (Home Savings) third-party complaint against respondent Bigelow. Home Savings contends that under the facts presented below, the district court erred in determining that, as a matter of law, the doctrine of laches prevented Home Savings from pursuing its claim against Bigelow. We agree. For the reasons expressed below, we reverse the order of the district court and remand this matter for further proceedings.

In 1977, H.S. Service Corporation, a wholly-owned subsidiary of Home Savings Association (collectively referred to as Home Savings), built a 301-unit apartment complex in Las Vegas. The complex was ultimately sold to a group called Forest Lane Associates. Approximately one year after its completion, the complex literally started to fall apart. Understandably upset by this turn of events, on October 15, 1979, Forest Lane Associates brought suit against Home Savings alleging breach of express and implied warranties, negligence and fraud. On August 24, 1981, after having successfully moved to implead Bigelow in the Forest Lane suit on an indemnity theory, Home Savings filed a first amended third-party complaint against Bigelow. According to Home Savings, Bigelow had total control over the construction of the apartment complex; therefore, Bigelow was responsible for any and all damages that might be assessed against Home Savings.

Bigelow moved to dismiss the third-party complaint on the ground of laches. According to Bigelow, in January of 1980, prior to the filing of the third-party complaint, he had an opportunity to purchase the apartment complex from Forest Lane Associates. Had he completed the purchase, Bigelow asserted, he would have demanded, as a condition of the sale, that Forest Lane

Associates voluntarily dismiss the action against Home Savings. Bigelow did not, however, complete the purchase of the complex. Bigelow further alleged that had he known Home Savings was going to look to him for indemnification, he would have completed his purchase of the complex in order to settle the litigation. Because he no longer had an opportunity to purchase the complex, Bigelow asserted that he had been prejudiced by Home Savings' delay in bringing the indemnification action.

Home Savings opposed the motion to dismiss alleging that in September 1980, Bigelow sought and was refused indemnification from Home Savings. Thus, according to Home Savings, Bigelow had reason to believe as early as September 1980 that he might be brought into the Forest Lane action. The district court disagreed and granted the motion to dismiss. This appeal followed.

Laches is more than mere delay in seeking to enforce one's rights, it is delay that works a disadvantage to another. Cooney v. Pedroli, 49 Nev. 55, 62, 235 P. 637, 640 (1925) (quoting Chase v. Chase, 37 A. 804, 805 (R.I. 1897)). The condition of the party asserting laches must become so changed that he cannot be restored to his former state. *Id.* It is well-established that "[e]specially strong circumstances must exist to sustain the defense of laches when the statute of limitations has not run." Lanigir v. Arden, 82 Nev. 28, 36, 409 P.2d 891, 896 (1966). Finally, applicability of the doctrine of laches turns upon the peculiar facts of each case. *See* Miller v. Walser, 42 Nev. 497, 181 P. 437 (1919).

In the instant case, Bigelow stated in his affidavit in support of the motion to dismiss, "[t]hat in January 1980 I negotiated with [Forest Lane Associates] for the purchase of Forest Lane, and *would probably have completed the purchase had I been a party to the lawsuit and therefore more strongly motivated.*" (Emphasis added.) Such a statement indicates a possibility that had Bigelow been brought into the action from its inception, he may still have declined to purchase the complex. Assuming, without deciding, that laches is a defense available to Bigelow, this speculative statement cannot establish as a matter of law the "especially strong circumstances" necessary to prefer the defense of laches over the applicable statute of limitations. *Lanigir,* 82 Nev. at 36, 409 P.2d at 896.

Further, rather than doing equity, in our view, the dismissal of the third-party complaint grants Bigelow a windfall. Had Bigelow purchased the complex, he may have settled the litigation, but he

would have incurred a $6 million dollar obligation. As a result of the dismissal, Bigelow faces no liability whatsoever. We cannot allow the application of the equitable doctrine of laches to produce such an inequitable result. *Cf.* Hanns v. Hanns, 423 P.2d 499, 513 (Or. 1967) (denying defendants a windfall which would result if defense of laches was sustained is not the kind of prejudice which would impel the court to deny relief which is otherwise appropriate). Thus, we conclude the district court erred in granting Bigelow's motion to dismiss.

Accordingly, we reverse the order of the district court dismissing the third-party complaint with prejudice, and we remand this case to the district court for further proceedings not inconsistent with this opinion.

YOUNG, C. J., SPRINGER and ROSE, JJ., and SHEARING, D. J.,[1] and THOMPSON, D. J.,[2] concur.

---

[1]The Honorable Miriam Shearing, Judge of the Eighth Judicial District Court, was designated by the Governor to sit in place of JUSTICE STEFFEN who voluntarily disqualified himself. Nev. Const. art. 6, § 4.

[2]The Honorable J. Charles Thompson, Judge of the Eighth Judicial District Court, was designated by the Governor to sit in place of JUSTICE MOWBRAY who voluntarily disqualified himself. Nev. Const. art. 6, § 4.